## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

**07-60058**

**CIV-COHN**

**MAGISTRATE JUDGE SNOW**

CHRISTOPHER A. RHOADES,

    Plaintiff,

vs.

VOIP, INC. and STEVEN IVESTER,

    Defendants.

_____

FILED by INTAKE

JAN 16 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

### COMPLAINT

Plaintiff Christopher A. Rhoades ("Rhoades"), by and through his undersigned attorneys and as and for his Complaint against Defendants VoIP, Inc. ("VoIP") and Steven Ivester ("Ivester") (collectively, "Defendants"), hereby avers as follows:

### Nature of the Action

1.      This is an action for damages arising out of the purchase of common stock of Defendant VoIP by Plaintiff Rhoades.

2.      In September and October 2005, Rhoades entered into two separate transactions in which he acquired a total of 625,000 shares of VoIP common stock, plus warrants for an additional 312,500 shares (separately, the "First Transaction" and the "Second Transaction," collectively, the "Stock Transactions"). Rhoades paid to VoIP a total of $500,000 in connection with the Stock Transactions.

3.      Rhoades was induced to enter into the Stock Transactions by documents, information, and statements, provided and representations made by VoIP and Ivester concerning VoIP's financial condition.

4.   Since the date of the Stock Transactions, Rhoades has learned that these documents, information, statements, and representations were blatantly false and misleading.

5.   In this action, based upon the Florida Securities And Investor Protection Act (the "FSIPA), Fl. St. §517.011, *et seq.,* the Florida Civil Theft Statute, FL. St. §772.11 (the "Civil Theft Statute")  and common law fraud, Rhoades seeks, among other things, (i) compensatory damages of not less than the three times his actual damages; (ii) rescission of the Second Transaction and an award of compensatory damages of not less than three times the amount paid by Rhoades in the Second Transaction, plus interest thereon at the legal rate from the date of purchase; (ii) punitive damages; and (iii) reasonable attorneys' fees and costs.

## Jurisdiction and Venue

6.   This Court has original subject matter jurisdiction over this action under 28 U.S.C. §1332, in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.   Venue is proper in this District under 28 U.S.C. §1391(a), in that VoIP and Ivester reside in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## The Parties

8.   Plaintiff Rhoades is an adult individual and a citizen of the State of Maine, who resides at 13 Hemlock Lane, Falmouth, Maine 04105.

9.   Defendant VoIP is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 151 South Wymore Road, Suite 3000, Altamonte Springs, Florida 32714, and with an office in Fort Lauderdale, Florida.

10.   Defendant Ivester is an adult individual and, upon information and belief, a

2

citizen of the State of Florida, who resides at 1058 Waterside Circle, Weston, Florida 33327. At all times relevant to this Complaint, Ivester was the Chief Executive Officer of VoIP.

**Background**

**A.      VoIP's Business**

11.      VoIP, formerly known as Millennia Tea Masters, Inc., is a provider of "voice over IP" technology and other products and services to residential and business customers.

12.      Voice over IP is a technology that enables users to make telephone calls over the Internet.

13.      Data networks, such as the Internet or local area networks, have always utilized packet-switched technology to transmit information between two communicating terminals (for example, a PC downloading a page from a web server, or one computer sending an e-mail message to another computer). The most common protocol used for communicating on these packet switched networks is internet protocol ("IP").

14.      Voice over IP allows for the transmission of voice through the compression of voice into data packets that are transmitted over data networks and then converted back into voice to be heard by the recipient. Voice over IP provides an alternative to traditional telephone networks, which use a fixed, electrical connection to carry voice signals through a series of switches to the final destination.

15.      VoIP, through its subsidiaries, provides a portfolio of IP multimedia-based products and services, including subscriber based voice services, SIP based infrastructure design and deployment, broadband customer premise equipment design and implementation services, as well as engineering design, manufacturing and distribution of wireless broadband technology.

3

## Facts

### A.    The Stock Transactions

16.    Some time during the first week of September 2005, Rhoades was contacted by Paul Caputo ("Caputo"), who, on behalf of VoIP, solicited Rhoades to invest in the Company. At all times relevant to this Complaint, Caputo purported to act as VoIP's authorized representative.

17.    During the course of several telephone conversations in the first two weeks of September 2005, VoIP, acting through Caputo, discussed with Rhoades, among other things, VoIP's recent acquisition of substantially all the assets of WQN, Inc., including allegedly high quality international prepaid virtual calling cards, personal 800 numbers, wholesale minutes and voice over IP subscriber based services.

18.    In connection with these conversations, VoIP, acting through Caputo, provided Rhoades with a document entitled "VOIP, Inc. Pending Acquisition of WQN with Consolidated Financials and Basic Overview, August 2005" (the "WQN Acquisition Document").

19.    The WQN Acquisition Document was provided to Caputo by VoIP, which had informed Caputo that the information contained in the document was accurate and complete.

20.    In these telephone conversations, VoIP, acting through Caputo, reviewed with Rhoades the revenue, expense, and other financial information contained in the WQN Acquisition Document, including the Profit and Loss Statements And Cash Flow Analyses for June through December 2005, January through December 2006, and January through December 2007.

21.    VoIP, acting through Caputo, and Rhoades specifically discussed the earnings results that VoIP had achieved up to that date, the expectations for what VoIP would achieve by

4

the close of the third quarter, which was two to three weeks away, and the expectations for the fourth quarter of 2005, starting on October 1.

22.     VoIP, acting through Caputo, represented to Rhoades that the financial information for the months of June through August 2005 as set forth in the WQN Acquisition Document was accurate, and that the projected financial information for the periods September 2005 forward as set forth in the WQN Acquisition Document was based on reasonable and conservative forecasts.

23.     VoIP, acting through Caputo, advised Rhoades that the investment opportunity being offered was subject to an impending deadline, and informed Rhoades that Rhoades would not be able to speak to or meet with VoIP's management personnel prior to the alleged deadline.

24.     In reliance upon VoIP's representations, as described above, Rhoades, on or about September 14, 2005, entered into the First Transaction whereby he purchased 250,000 shares of VoIP common stock at a purchase price of $0.80 per share for a total purchase price of $200,000. As part of the First Transaction, Rhoades also acquired warrants for the purchase of 125,000 additional VoIP shares at a strike price of $2.60 per share.

25.     VoIP, acting through Caputo, advised Rhoades that the First Transaction would be a private placement of securities that were exempt from state and federal registration requirements.

26.     Thereafter, Rhoades traveled to VoIP's offices in Florida to tour VoIP's facilities and meet with its management and technical personnel.

27.     On September 29, 2005, Rhoades met with Ivester and Caputo for approximately one hour at VoIP's Ft. Lauderdale offices (the "September 29 Meeting"). At the September 29 Meeting, Ivester solicited Rhoades to make a further investment in the Company. During the

5

September 29 Meeting, Ivester acted as VoIP's authorized representative.

28.    During the September 29 Meeting, Ivester reviewed and discussed in detail the financial information contained in the WQN Acquisition Document and reaffirmed the representations concerning VoIP's financial condition that VoIP had previously made to Rhoades through Caputo.

29.    At the September 29 Meeting, Ivester represented to Rhoades that the revenue, expense, and EBITDA figures for the third quarter of 2005 (which was to end the very next day) as stated in the WQN Acquisition Document were, in fact, accurate.

30.    At the September 29 Meeting, Ivester also represented to Rhoades that:

    (i)    The projected fourth quarter figures as set forth in the WQN Acquisition Document were conservative estimates, based solely on contracts that were already in place;

    (ii)    VoIP had several new contracts that were imminent, and which should provide a basis for even greater revenue and profitability during the fourth quarter of 2005;

    (iii)    VoIP was presently generating near to positive cash flow; and

    (iv)    Although Rhoades' initial purchase of VoIP shares, and any subsequent purchase shares, would be deemed a "private placement" of "unregistered securities," a registration statement would be completed by the end of 2005 or the early part of 2006, after which Rhoades would be free to sell his VoIP shares if he so desired.

31.    In reliance upon Ivester's representations, as described above, Rhoades, on or about October 31, 2005, entered into the Second Transaction whereby he purchased an additional

6

375,000 shares of VoIP common stock at a purchase price of $0.80 per share for a total purchase price of $300,000. As part of the Second Transaction, Rhoades also acquired warrants for the purchase of 187,500 additional VoIP shares at a strike price of $2.60 per share.

**B.      The Falsity of VoIP's Statements and Failure to Register the VoIP Shares Purchased by Rhoades**

32.     Rhoades has since discovered that the representations made by VoIP and Ivester concerning VoIP's financial condition, which specifically induced Rhoades to enter into the Stock Transactions, were false and misleading.

33.     The falsity of Defendants' representations concerning VoIP's third quarter 2005 financial performance was revealed when VoIP published the actual financial results for that quarter. These actual results were dramatically different from -- and worse than -- those represented by Defendants.

34.     Among other things, VoIP's actual revenues for the period July 1 through September 30, 2005 were approximately 50% less than represented; actual operating expenses were more than 250% greater than represented; actual gross loss was approximately 300% worse than represented; and actual EBITDA loss was more than 250% worse than was represented.

35.     A comparison of VoIP's actual financial performance for the third quarter of 2005 against the performance as represented to Rhoades by Defendants demonstrates the false and fraudulent nature of Defendant's representations:

|  | Actual Results | Results As Represented to Rhoades |
|---|---|---|
| Revenues | $2,535,912 | $4,509,739 |
| Gross Profit (Loss) | ($617,291) | $322,354 |
| Operating Expenses | $8,230,002 | $3,089,933 |
| EBITDA (Loss) | ($7,593,514) | ($2,767,579) |

7

36.   The falsity of Defendants' representations concerning VoIP's expected fourth quarter 2005 financial performance was revealed once VoIP published the actual financial results for that quarter.  These actual results were dramatically different from -- and worse than -- those represented by Defendants.

37.   Among other things, VoIP's actual revenues for the period October 1 through December 31, 2005 were approximately 50% less than represented; actual operating expenses were approximately 350% greater than represented; actual gross loss was approximately 120% worse than represented; and actual EBITDA loss approximately 2000% worse than was represented.

38.   A comparison of VoIP's actual financial performance for the fourth quarter of 2005 against the performance as represented to Rhoades by Defendants demonstrates the false and fraudulent nature of VoIP's conduct:

|  | Actual Results | Results As Represented to Rhoades |
|---|---|---|
| Revenues | $9,054,313 | $16,503,160 |
| Gross Profit (Loss) | ($629,735) | $2,901,260 |
| Operating Expenses | $11,980,997 | $3,498,265 |
| EBITDA (Loss) | ($11,681,111) | ($597,005) (includes Dec. estimate for positive EBITDA of $18,000) |

39.   The falsity of VoIP's and Ivester's representations concerning VoIP's assertedly near positive cash flow was revealed when, shortly after the Stock Transactions, Ivester, sold over 2 million of his shares in VoIP in order to loan the Company money.

40.   The falsity of VoIP's and Ivester's representations concerning the prompt registration of the VoIP shares purchased by Rhoades was revealed by VoIP's failure to register

8

such shares as promised. Upon information and belief, the VoIP shares of stock purchased by Rhoades have never been registered, notwithstanding Ivester's promise that they would be, as well as the subsequent representations of VoIP's authorized representatives and counsel that such registration was imminent.

41.     Since the date of the Stock Transactions, the market price of VoIP's stock has fallen dramatically; however, Rhoades was prevented from mitigating his damages by selling his VoIP shares because they were unregistered securities.

42.     Rhoades was finally permitted to sell the 250,000 VoIP shares that he acquired in the First Transaction on November 14, 2006, and he did so, selling them at a sale price of $.31 per share.

43.     Rhoades executed an order to sell the 375,000 VoIP shares that he acquired in the Second Transaction on November 20-21 2006, at a sale price of $.41 per share. As of this date, however, the sale has not settled because VoIP has refused to provide an opinion letter that such shares may be sold.

44.     Had Defendants truthfully and accurately represented VoIP's financial condition to him, Rhoades would never have entered into the Stock Transactions.

### COUNT I
### Violation of Section 517-311 of The
### Florida Securities And Investor Protection Act

45.     Rhoades incorporates by reference, as if set forth at length herein, each and every allegation of paragraphs 1 through 44 of this Complaint.

46.     The FSIPA provides, in pertinent part, that:

(1)     It is unlawful and a violation of the provisions of this chapter for a person:

(a)     In connection with ... the offer, sale, or purchase of any investment or security, ... directly or indirectly:

9

1.   To employ any device, scheme, or artifice to defraud;

2.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

        *        *        *        *

(c)   In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

Fl. St. §§517.301(a), (b).

47.   Section 517.211 of the FSIPA identifies persons liable for violations of the Act's anti-fraud provisions, and sets out available remedies to aggrieved parties. It provides, in pertinent part, that:

(2)   Any person ... selling a security in violation of §517.301, and every ... officer, ... or agent of or for the ... seller, if the ... officer, ... or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person ... purchasing the security from such person in an action for rescission, if the plaintiff still owns the security ....

(3)   In an action for rescission:

(a) A purchaser may recover the consideration paid for the security or investment, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment. ....

(4)   In an action for damages brought by a purchaser of a security or investment, the plaintiff shall recover an amount equal to the difference between:

(a) The consideration paid for the security or investment, plus interest

10

thereon at the legal rate from the date of purchase; and

(b) The value of the security or investment at the time it was disposed of by the plaintiff, plus the amount of any income received on the security or investment by the plaintiff.

*       *       *       *

(6)   In any action brought under this section, including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust.

Fl. St. §517.211.

48.   The VoIP stock shares purchased by Rhoades in connection with the Stock Transactions constitute "securities" within the meaning of the FSIPA.

49.   Defendants' false representations made in connection with the Stock Transactions, as described above, were made within the State of Florida.

50.   Defendants' false representations made in connection with the Stock Transactions, as described above, constitute a device, scheme, or artifice to defraud in violation of Section 517.310 (a) of the FSIPA. Fl. St. §517.301(a).

51.   Defendants obtained money from Rhoades in connection with the Stock Transactions by means of untrue statements of material fact and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading in violation of Section 517.310 (a) of the FSIPA. Fl. St. §517.301(a).

52.   By making false representations in connection with the Stock Transactions, as described above, Defendants engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Rhoades in violation of Section 517.310 (a) of the FSIPA. Fl. St. §517.301(a).

53.   By making false representations in connection with the Stock Transactions, as described above, Defendants knowingly and willfully falsified, concealed and covered up by

11

trick, scheme, or device, a material fact, made false, fictitious, and fraudulent statements or representations, and made or used a false writing or document, knowing the same to contain false, fictitious, or fraudulent statements or entries in violation of Section 517.310 (b) of the FSIPA.  Fl. St. §517.301(b).

54.    Defendants' false representations made in connection with the Stock Transactions, were material to Rhoades' decision whether to enter into the Stock Transactions.

55.    Rhoades reasonably relied upon Defendants' representations, as well as Defendants' duty to disclose all material facts, in deciding to consummate the Stock Transactions.

56.    Defendants acted with knowledge of the falsity of the representations and statements they made connection with the Stock Transactions, or with reckless disregard for their truth, and with knowledge of the misleading nature of their omissions of fact.

57.    Defendants made these false and misleading statements and omissions with the intent to deceive, manipulate, and defraud Rhoades.

58.    Rhoades has been damaged by Defendants' false and misleading statements and omissions, and such misrepresentations were the proximate cause of his damages.

## COUNT II
## Common Law Fraud and Misrepresentation

59.    Rhoades incorporates by reference, as if set forth at length herein, each and every allegation of paragraphs 1 through 58 of this Complaint.

60.    Defendants made affirmative misrepresentations of material fact in connection with the Stock Transactions, as described above, and/or omitted statements that would otherwise have made the statements made therein not misleading

61.    At the time these representations were made, Defendants knew that they were

12

false and/or misleading.

62.    Defendants' misrepresentations and omissions, as described above, were made for the purpose of inducing Rhoades to enter into the Stock Transactions.

63.    Rhoades justifiably relied to his detriment upon the representations made by Defendants in making his decision to enter into the Stock Transactions.

64.    Rhoades has suffered losses and damages as a proximate result of Defendants' misrepresentation and fraud.

65.    Defendants' fraud and misrepresentation in connection with the Stock Transactions was willful, wanton, and outrageous, and performed with callous disregard for the rights of Rhoades.

**COUNT III**
**Violation of The**
**Florida Civil Theft Statute**

66.    Rhoades incorporates by reference, as if set forth at length herein, each and every allegation of paragraphs 1 through 65 of this Complaint.

67.    Florida's Civil Theft Statute provides, in pertinent part, that

> Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of §§812.012-812.037 or §825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

F. St. §722.11.

68.    Section 812.014, Florida Statutes, sets forth the elements of theft.  It provides, in pertinent part, that:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent

13

to, either temporarily or permanently:

(a) Deprive the other person of a right to the property or a benefit from the property.

(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

69.     By entering into the Stock Transactions with Rhoades, Defendants knowingly obtained Rhoades' property -- his money -- with the intent to temporarily or permanently deprive Rhoades of the right to or benefit of such property and/or appropriate it to their own use in violation of Fl. St. §812.014.

70.     Rhoades has suffered losses and damages as a proximate result of Defendants' violation of Fl. St. §812.014.

### Prayer For Relief

WHEREFORE Plaintiff Christopher A. Rhoades respectfully requests that this Court enter judgment in his favor and against Defendants VoIP, Inc. and Steven Ivester, jointly and severally, as follows:

(a)     On Count One, awarding damages to Rhoades in an amount not less than the difference between the consideration paid by Rhoades for the VoIP stock acquired in the First Transaction, plus interest thereon at the legal rate from the date of purchase, and the value of such VoIP stock at the time it was disposed of by Rhoades; awarding damages in an amount not less than the consideration paid by Rhoades in the Second Transaction, plus interest thereon at the legal rate from the date of the Second Transaction; awarding Rhoades his reasonable attorneys' fees and costs incurred in pursuing such recovery; and awarding such other and further relief as this Court deems just and proper.

(b)     On Count Two, awarding damages to Rhoades in an amount to be

determined at trial, and including punitive damages; awarding Rhoades his costs incurred in pursuing such recovery; and awarding such other and further relief as this Court deems just and proper.

(c)     On Count Three, awarding damages to Rhoades in an amount not less than three times the consideration paid by Rhoades for the VoIP stock, less any sums recouped from the resale of any stock, plus interest thereon at the legal rate from the date of purchase; awarding Rhoades his reasonable attorneys' fees and costs incurred in pursuing such recovery; and awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:  January 16, 2007

Respectfully submitted,

EQUELS LAW FIRM
2601 South Bayshore Drive, Suite 600
Miami, Florida  33133
Telephone:  (305) 859-7700
Facsimile:  (305) 859-9996

Of Counsel:

BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
Paul McDonald
100 Middle Street, West Tower
P.O. Box 9729
Portland, Maine 04104-4166
Telephone:  (207) 774-1200

By: _____
     Joseph L. Raia
     Florida Bar No. 322083
     Email:  jraia@equelslaw.com

*Attorneys for Plaintiff*

/2231.doc/

15

**CIVIL COVER SHEET** 07 - 60058

⊾JS 44   (Rev. 11/05)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

CIV-COHN
MAGISTRATE JUDGE
SNOW

**I. (a) PLAINTIFFS**

CHRISTOPHER A. RHOADES

**DEFENDANTS**

VoIP, INC and STEVEN IVESTER

**(b)** County of Residence of First Listed Plaintiff   Cumberland County, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Seminole County, FL
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

JAN 16 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Joseph L. Raia, Esq., Equels Law Firm
2601 S. Bayshore Drive, Suite 600, Miami, FL 33133
Tel: (305) 859-7700

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant) | | | |
|---|---|---|---|---|---|
| | | | PTF DEF | | PTF DEF |
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1  ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4  ☑ 4 |
| ☐ 2  U.S. Government Defendant | ☑ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☑ 2  ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5  ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3  ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

Broward   07- 60058 - CIV- Cohn

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE   DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332.  Plaintiff sues Defendants for securities fraud, common law fraud, and civil theft, all under Florida law.

LENGTH OF TRIAL via  5  days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE   SIGNATURE OF ATTORNEY OF RECORD   DATE  01/15/07

FOR OFFICE USE ONLY
AMOUNT $350.00   RECEIPT # 9531   IFP

01/16/07